## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TYRUS DAVIS and CHRISTOPHER BINGHAM, *individually, and on behalf of a class of similarly situated persons*,<br><br>Plaintiffs,<br><br>v.<br><br>CALIBER HOME LOANS, INC.,<br><br>Defendant. | Case No. 1:20-cv-338<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

1.      Plaintiffs, on behalf of themselves and all others similarly situated, allege breaches of contract and violations of North Carolina Debt Collection Act, North Carolina Mortgage Debt Collection and Servicing Act, the North Carolina Unfair and Deceptive Trade Practices Act, and the Maryland Consumer Debt Collection Act against Defendant Caliber Home Loans, Inc. ("Caliber").

2.      Defendant Caliber is a servicer of residential mortgages around the country. Caliber routinely violates state law, and breaches the uniform terms of borrowers' mortgages ("Uniform Mortgages") by charging and collecting illegal processing fees ("Pay-to-Pay Fees") when borrowers pay their monthly mortgage by certain channels, such as through an ATM or

online ("Pay-to-Pay Transactions"). On information and belief, it only costs Caliber approximately $0.40 to process the Pay-to-Pay Transactions. Caliber then collects Pay-to-Pay Fees of anywhere from $3.50 to $8.00, pocketing the difference.

3.     Both Maryland and North Carolina state law prohibit Caliber from collecting any amount in addition to the principal obligation unless *such amount is explicitly stated in the agreement creating the debt or permitted by law.* But Pay-to-Pay Fees are found nowhere in the Uniform Mortgages and are not permitted by state debt collection law. Caliber is not permitted under state law or the Uniform Mortgages to convert borrowers' attempts to pay their mortgages into a profit center for itself.

4.     The FHA requires all loan servicers, including Caliber, to be approved by the FHA before servicing any loans.  Loan servicers, like Caliber, are paid loan servicing fees out of the interest paid by FHA borrowers.  In exchange for the regular loan servicing fees paid by from borrowers' monthly interest payments, Caliber and other FHA approved loan servicers agree to follow the FHA's rules regarding loan servicing, as implemented by the Secretary of Housing and Urban Development ("HUD").

5.     In addition, FHA approved loan servicers, like Caliber, may collect additional revenue for additional work performed for the borrower. But the uniform FHA mortgage agreement explicitly limits additional fees only to those specific fees authorized by the Secretary of HUD.  Exhibit B, Maryland Mortgage Agreement, ¶ 8.

6.     Despite its uniform contractual obligations to charge only fees explicitly allowed under the Uniform Mortgages and applicable law, and for FHA mortgages, only those fees approved by the HUD Secretary, Caliber leverages its position of power over homeowners

and demands exorbitant Pay-to-Pay Fees. Even if some fee were allowed, the mortgage uniform covenants and applicable law only allow Caliber to pass along the actual costs of fees incurred to it by the borrowers—here, only a few cents per transaction.

7.    Plaintiffs Tyrus Davis and Christopher Bingham paid these Pay-to-Pay Fees and they bring this class action lawsuit individually and on behalf of all similarly situated putative class members.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction under 28 U.S. Code § 1332(d) because complete diversity exists between the Defendant and at least one member of the proposed class and the matter in controversy exceeds $5,000,000.  Caliber services over 400,000 loans nationwide, and collects Pay-to-Pay Fees from the classes alleged that are believed to be in an amount that exceeds $5 million.

9.    This Court has personal jurisdiction because Caliber transacts business in Maryland and commits torts in Maryland, as described in this Complaint.

10.   Venue is proper because this is where the cause of action accrued.

## PARTIES

11.   Plaintiff Tyrus Davis is a natural person residing in the North Carolina. During all relevant times herein, Mr. Davis owned property located in Greensboro, North Carolina secured by a mortgage. Mr. Davis has an FHA-insured deed of trust that is serviced by Caliber. Caliber charged Mr. Davis several Pay-to-Pay Fees when he made mortgage payments. For example, on or about December 10, 2019, Caliber charged Mr. Davis a $3.50 Pay-to-Pay Fee when he made a mortgage payment online.

3

12.     Plaintiff Christopher Bingham is a natural person residing in Maryland. During all relevant times herein, Mr. Bingham owned property located in Aberdeen, Maryland secured by a mortgage. Caliber is his mortgage servicer. Caliber charged Mr. Bingham several Pay-to-Pay Fees when he made mortgage payments. For example, Caliber charged Mr. Bingham $3.50 to pay his mortgage online, including on December 16, 2019. Similarly, Caliber charged Mr. Bingham $8 to pay his mortgage at an ATM, including on July 20, 2019.

13.     Defendant Caliber is a Delaware corporation with its principal place of business in Texas.

## APPLICABLE LAW AND SERVICING RULES

**North Carolina Debt Collection Act ("NCDCA")**

14.     The NCDCA offers broad protection to consumers from underhanded methods used by unscrupulous creditors and debt collectors. It applies broadly.

15.     The NCDCA defines "debt collector" as "any person engaging, directly or indirectly, in debt collection from a consumer. N.C. Gen. Stat. § 75-50(3).[1] It allows recovery against both creditors collecting debts in their own names, and those whose primary business is debt collection via loan servicing.

16.     A "consumer" under the NCDCA is "any natural person who incurred a debt or alleged debt for personal, family, household or agricultural purposes." N.C. Gen. Stat. § 75-

---

[1] The statute does not apply to collection agencies, however, which are subject to the North Carolina Collection Agency Act ("NCCAA"), N.C. Gen. Stat. § 58-70-1 to -155. Based on the information known to Plaintiff Davis as of the filing of this complaint, Caliber is not a "collection agency" within the meaning the NCCAA, as it has not purchased delinquent debt. Plaintiff Davis will amend to add claims under the NCCAA if discovery reveals that Caliber is in fact a collection agency.

4

50(1).

17.    A "debt" under the NCDCA is "any obligation owed or due or alleged to be owed or due from a consumer." N.C. Gen. Stat. § 75-50(2).

18.    The NCDCA prohibits "debt collectors" from "[c]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered [or] any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such a fee or charge."  N.C. Gen. Stat. § 75-55(2). Seeking to collect a debt that includes a Pay-to-Pay Fee violates this provision of the NCDCA.

**North Carolina Mortgage Debt Collection and Servicing Act ("NCMDCSA")**

19.    The NCMDCSA incorporates the definition of the word "servicer" from the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(i), which in turn defines servicer as the person responsible for servicing of the loan, except those who also make or hold the loan. *See* N.C. Gen. Stat. § 45-90(2).

20.    A "home loan" under the NCMDCSA is defined as a "loan secured by real property located in this State used, or intended to be used, by an individual borrower or individual borrowers in this State as a dwelling, regardless of whether the loan is used to purchase the property or refinance the prior purchase of the property or whether the proceeds of the loan are used for personal, family, or business purposes." *See* N.C. Gen. Stat. § 45-90(1).

21.    The NCMDCSA requires that any fee charged by a servicer "be otherwise permitted under applicable law and the contracts between the parties." *See* N.C. Gen. Stat. § 45-91(4). Seeking to collect a debt that includes a Pay-to-Pay Fee violates this provision of the

5

NCMDCSA.

**North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA")**

22. The NCUDTPA broadly prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce. *See* N.C. Gen. Stat. § 75-1.1. Seeking to collect a debt that includes a Pay-to-Pay Fee violates this provision of the NCUDTPA.

**Maryland Consumer Debt Collection Act ("MCDCA")**

23. The Maryland Consumer Debt Collection Act offers broad protection to consumers from underhanded methods used by unscrupulous creditors and debt collectors. It applies more broadly than the FDCPA.

24. The MCDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code, Com. L., § 14-201(b). It allows recovery against both creditors collecting debts in their own names, and those whose primary business is debt collection.

25. A "consumer transaction" under the MCDCA is "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes." Md. Code, Com. L., § 14-201(c).

26. The MCDCA prohibits "collectors" from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *Id.* § 14-202(8). Seeking to collect a debt that includes "an unauthorized type of charge" violates this provision of the MCDCA.

6

## FHA SERVICING RULES

27.     The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development, "provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories."[2] The FHA "is the largest insurer of mortgages in the world, insuring over 47.5 million properties since its inception in 1934."[3]

28.     The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

29.     To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses as the result of homeowners defaulting on their mortgage loans. The lenders bear less risk because FHA will pay a claim to the lender in the event of a homeowner's default."[4]

30.     The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." (*Id.*)

31.     Defendant Caliber is an FHA-approved Mortgagee.

32.     As an FHA-approved Mortgagee, Caliber must annually "acknowledge that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all

---

[2] HUD.gov – The Federal Housing Administration,
https://www.hud.gov/program_offices/housing/fhahistory (last visited on April 9, 2020).
[3] *Id.*
[4] *Id.*

applicable HUD regulations, **Handbooks**, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR § 5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."[5]

33.     HUD's servicing requirements restrict the fees and charges an FHA-approved Mortgagee may collect from the typically lower-income FHA borrower. HUD Handbook 4000.1: *Single-Family Housing Policy*,

https://www.hud.gov/sites/documents/40001HSGH.PDF (last accessed by counsel on April 9, 2020) (the "HUD Handbook").

34.     HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration." *Id.*

35.     These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

36.     FHA-insured mortgages contain uniform covenants.

37.     In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges **authorized** by the Secretary [of Housing and Urban Development]." Ex. B at ¶ 8 (emphasis added).

38.     This provision incorporates by reference HUD's limits on allowable fees.

---

[5] *See*, FHA Lender Annual Certifications: Supervised and Nonsupervised Mortgagees, Changes Implemented 8/1/2016, https://www.hud.gov/sites/documents/SFH_COMP_SUPERNONSUPER.PDF (last visited on April 9, 2020) (emphasis added).

39.     The HUD Handbook establishes what fees and charges authorized by the HUD.

40.     Appendix 3.0 of the HUD Handbook contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees.[6]

41.     Pay-to-Pay Fees are not on that list.

42.     Based upon information and belief, the Pay-to-Pay Fees that Caliber collects from borrowers exceed its out-of-pocket costs by several hundred percent, and thus violate mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages.

## FACTUAL ALLEGATIONS

43.     Caliber is a loan servicer that operates around the country. Its principal purpose is to collect debt and it uses interstate commerce to collect debt.

44.     Each time a mortgage borrower whose loan is serviced by Caliber makes a loan payment online or at an ATM, Caliber charges the borrower a Pay-to-Pay Fee of $3.50 and $8, respectively.

45.     The cost for Caliber to process the Pay-to-Pay Transactions is well below the amounts charged to borrowers, and Caliber illegally profits the difference as profit.

46.     The uniform contractual obligations in the mortgages Caliber services do not authorize Caliber to assess Pay-to-Pay Fees.

---

[6] In the PDF version of the HUD Handbook, the term "maximum amount allowed by HUD" contains a hyperlink that, when clicked, brings the reader to Appendix 3.0.

47.     At most, the mortgage uniform covenants allow Caliber to pass along only the actual cost of fees incurred by it to the borrower.

48.     Caliber violates its borrowers' Uniform Mortgages when it assesses such fees. Caliber frequently, intentionally, and persistently collects Pay-to-Pay Fees even though such fees are not authorized by the mortgages and it therefore had no right to collect them.

**Plaintiff Davis**

49.     Mr. Davis owns property in Greensboro, North Carolina that is secured by a mortgage and Deed of Trust (the "N.C. Mortgage Agreement") and that he purchased for his personal residence. Mr. Davis executed the Deed of Trust on August 23, 2006 for $108,900, attached hereto as **Exhibit A.** Mr. Davis took out the mortgage loan secured by his property for personal, family, or household uses.

50.     Caliber is the servicer for Mr. Davis's mortgage.

51.     Mr. Davis has made payments online. Each time he does so, Caliber charges him a Pay-to-Pay Fee. For example, on or about December 10, 2019, Caliber charged Mr. Davis a $3.50 Pay-to-Pay Fee when he made a mortgage payment online.

52.     These fees were not authorized by the N.C. Mortgage Agreement.

53.     Caliber collected the Pay-to-Pay Fees even though it knew that such fees were not authorized under the N.C. Mortgage Agreement, and that it therefore had no right to collect them.

54.     Caliber's collection of the Pay-to-Pay Fees violated the NCDCA because the N.C. Mortgage Agreement does not expressly allow Caliber to charge Pay-to-Pay Fees. *See*

10

N.C. Gen. Stat. § 75-55(2) (making it illegal to collect "any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such a fee or charge").

55.     Mr. Davis, like many borrowers, has a mortgage that incorporates model language drafted by Fannie Mae. Like other Fannie Mae mortgages, the N.C. Mortgage Agreement states that the servicer "may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." Ex. A ¶ 14.

56.     "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2 ¶ I.

57.      By collecting fees in violation of Applicable Law, i.e., North Carolina law, Caliber breached the uniform covenants of the N.C. Mortgage Agreement.

58.     Even if Caliber is allowed to collect a fee under the auspice that it is a default related fee under Paragraph 9 of the N.C. Mortgage Agreement, Caliber's demand for payment of Pay-to-Pay Fees was a direct breach of that paragraph, too. Paragraph 9 of the N.C. Mortgage Agreement states that only "amounts disbursed by Lender under this Section 9 shall become an additional debt of Borrower secured by this Security Instrument." *See* Ex. A ¶ 9 (emphasis added). Caliber collected more than the amount it disbursed to process the Pay-to-Pay Transactions.

59.     The above paragraphs are contained in the Uniform Covenants section of the North Carolina Mortgage Agreement. Caliber has thus breached its contracts on a class-wide basis.

60. Because the above provisions are contained in the "Uniform Covenants" section of the N.C. Mortgage Agreement, Caliber has breached its contracts on a class-wide basis.

61. Caliber acted deceitfully by assessing Mr. Davis more in Pay-to-Pay Fees than it actually disbursed to process the Pay-to-Pay Transactions.

62. Prior to filing this Complaint, Mr. Davis made a written pre-suit demand upon Caliber.

63. Caliber was given a reasonable opportunity to cure the breaches complained of herein but failed to do so.

**Plaintiff Bingham**

64. Mr. Bingham owns property in in Aberdeen, Maryland that is secured by a mortgage and an FHA-insured Deed of Trust (the "Maryland Mortgage Agreement") and that he purchased for his personal residence. Mr. Davis executed the FHA-insured Deed of Trust on November 10, 2015 for $409,446, attached hereto as **Exhibit B.** Mr. Bingham took out the mortgage loan secured by his property for personal, family, or household uses.

65. Caliber became the servicer of his mortgage.

66. Caliber's principal purpose is to collect debt, and it regularly collects debts which are owed and due another. Thus, Caliber is also a "collector" under the MCDCA.

67. Mr. Bingham made timely mortgage payments.

68. Mr. Bingham sometimes makes his mortgage payments online or at the ATM. When he does, Caliber charges him a Pay-to-Pay Fee. For example, Caliber charged Mr. Bingham $3.50 to pay his mortgage online, including on December 16, 2019. Similarly, Caliber

charged Mr. Bingham $8 to pay his mortgage at an ATM, including on July 20, 2019. These fees were not authorized by the Maryland Mortgage Agreement.

69.     Caliber collected the Pay-to-Pay Fees even though it knew that such fees were not authorized under the Maryland Mortgage Agreement, and that it therefore had no right to collect them.

70.     Mr. Bingham, like many borrowers, has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of the FHA mortgages state that the lender may only assess fees authorized by the Secretary of HUD.

71.     Mr. Bingham's FHA mortgage, which states that the mortgage "shall be governed by federal law and the law of the jurisdiction in which the Property is located." *See* Exhibit B, ¶ 14.

72.     HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

73.     The Handbook does not authorize Pay-to-Pay Fees. Caliber has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

13

74. Like other FHA mortgages, the Maryland Mortgage Agreement states that "Lender may collect fees and charges authorized by the Secretary." Ex. B, ¶ 8. By assessing Pay-to-Pay Fees not "authorized by the Secretary," Caliber violated the uniform covenants of the Maryland Mortgage Agreement.

75. Caliber's collection of the Pay-to-Pay Fees violated the MCDCA ("the law of the jurisdiction in which the Property is located") because the Maryland Mortgage Agreement does not expressly allow Caliber to charge Pay-to-Pay Fees. *See* Md. Code, Com. L, § 14-202(8), (11).

76. Because the above provisions are contained in the "Uniform Covenants" section of the Maryland Mortgage Agreement, Caliber has breached its contracts on a class-wide basis.

77. Caliber acted deceitfully by assessing Mr. Bingham more in Pay-to-Pay Fees than it actually disbursed to process the Pay-to-Pay Transactions.

78. Prior to filing this Complaint, Mr. Bingham made a written pre-suit demand upon Caliber.

79. Caliber was given a reasonable opportunity to cure the breaches complained of herein but failed to do so.

## CLASS ACTION ALLEGATIONS

80. Plaintiffs bring this action under Fed. R. Civ. P. 23 on behalf of the following classes of persons, subject to modification after discovery and case development:

**FHA Pay-to-Pay Class:** All persons in the United States (1) with an FHA-insured mortgage (2) originated or serviced by Caliber (3) who were charged one or more Pay-to-Pay fee and (4) whose mortgages provide the "Lender may collect fees or charges authorized by the Secretary," or language substantially similar.

**North Carolina Class**: All persons (1) with a residential mortgage loan securing a property in North Carolina, (2) serviced by Caliber, (3) and who paid a fee to Caliber for making a loan payment by telephone, IVR, at an ATM, or the internet, during the applicable statutes of limitations through the date a class is certified.

**Maryland Class:** All (1) with a residential mortgage loan securing a property in Maryland, (2) originated or serviced by Caliber, (3) and who paid a fee to Caliber for making a loan payment by telephone, IVR, at an ATM, or the internet, during the applicable statutes of limitations through the date a class is certified.

81.    Class members are identifiable through Defendant's records and payment databases.

82.    Excluded from the classes are the Defendant; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

83.    Plaintiffs propose that they be appointed as class representatives.

84.    Plaintiffs and the Classes have all been harmed by the actions of Defendant.

85.    Numerosity is satisfied. Upon information and belief, there are thousands of class members.  Individual joinder of these persons is impracticable.

86.    There are questions of law and fact common to Plaintiffs and the Classes, including, but not limited to:

a.    Whether Caliber violated the NCDCA by charging Pay-to-Pay Fees not due;

b.    Whether Caliber violated the NCMDCSA by charging Pay-to-Pay Fees not due;

c.  Whether Caliber violated the NCUDTPA by charging Pay-to-Pay Fees not due;

d.  Whether Caliber violated the MCDCA by charging Pay-to-Pay Fees not due;

e.  Whether Caliber breached its mortgage agreements by charging Pay-to-Pay Fees not due;

f.  Whether Caliber's costs of the Pay-to-Pay Transactions are less than the amount it charged for Pay-to-Pay fees;

g.  Whether Plaintiffs and the Class members are entitled to injunctive relief;

h.  Whether Plaintiffs and the Class Members are entitled to actual and/or statutory damages as a result of Defendant's actions; and

i.  Whether Plaintiffs and the Class are entitled to attorney's fees and costs.

87.  Plaintiffs' claims are typical of the claims of class members.  Caliber charged Plaintiffs Pay-to-Pay Fees in the same manner as the Class Members.  Plaintiffs and the Class Members entered into uniform covenants in their Mortgage Agreements that prohibit Pay-to-Pay charges.  Alternatively, if Caliber is allowed under the Mortgage Agreements to charge Pay-to-Pay Fees, such amount is capped at the actual amounts disbursed by Caliber to process the Pay-to-Pay Transactions.

88.  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members and they will fairly and adequately protect the interests of the Class.  Plaintiffs have taken actions before filing this Complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of class members to protect the interests of the class.

89.     Plaintiffs have hired counsel that is skilled and experienced in class actions and are adequate class counsel capable of protecting the interests of the class members.

90.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

91.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

## COUNT I
## VIOLATION OF THE NORTH CAROLINA DEBT COLLECTION ACT
### N.C. Gen. Stat. § 75-55(2)
### On Behalf of Plaintiff Davis and the North Carolina Class

92.     All prior and subsequent paragraphs are hereby incorporated by reference.

93.     Plaintiff Davis and the North Carolina Class Members engaged in consumer transactions when they took out mortgages in order to acquire real property for personal, family, or household uses. Mr. Davis took out the mortgage loan secured by his property and now serviced by Caliber for personal, family, or household uses. *See* N.C. Gen. Stat. § 75-50(1).

94.     The NCDCA defines "debt collector" as "any person engaging, directly or indirectly, in debt collection from a consumer. N.C. Gen. Stat. § 75-50(3). The NC DCA applies to Caliber because it attempts to collect alleged debts arising out of consumer transactions, when it collects a debt associated with consumer mortgages.

95.     Caliber violated N.C. Gen. Stat. § 75-55(2) when it attempted to collect, and collected, any part of Caliber's fee or charge for services rendered, and when it attempted to

17

collect, and collected a "charge, fee or expense incidental to the principal debt" when it was not legally entitled to such a fee or charge. a debt associated with mortgage payments.

96.     Caliber knew that the Mortgage Agreements of Plaintiff Davis and the North Carolina Class Members did not expressly authorize Caliber to collect Pay-to-Pay Fees, and that Caliber did not have a right to collect the fees or charges it paid to third parties, such as Western Union, for Pay-to-Pay services rendered. Caliber also knew that the Pay-to-Pay fees charged were unauthorized charges, fees, or expenses that were incidental to the underlying debt. Caliber knew that it was collecting more than the cost to process the Pay-to-Pay Transactions when it collected the Pay-to-Pay Fees. Despite this knowledge, Caliber represented to Plaintiff Davis and the North Carolina Class Members that it had the right to collect Pay-to-Pay Fees, and collected them from Plaintiff Davis and the North Carolina Class Members.

97.     As a result of Caliber's violations of the NCDCA, Plaintiff Davis and the North Carolina Class members were harmed.

**COUNT II**
**VIOLATION OF THE NORTH CAROLINA MORTGAGE DEBT**
**COLLECTION AND SERVICING ACT**
**N.C. Gen. Stat. § 45-91(4)**
**On Behalf of Plaintiff Davis and the North Carolina Class**

98.     All prior and subsequent paragraphs are hereby incorporated by reference.

99.     Plaintiff Davis and the North Carolina Class Members have "home loans" as they obtained mortgages for real property in North Carolina that were intended to be used as dwellings. *See* N.C. Gen. Stat. § 45-91(4).

18

100.     The NCMDCSA incorporates the definition of the word "servicer" from the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(i), which in turn defines servicer as the person responsible for servicing of the loan, except those who also make or hold the loan. The NCMDCSA applies to Caliber because it services the loans of Mr. Davis and the North Carolina Class Members, however it does not hold these loans nor was it the lender.

101.     Caliber violated N.C. Gen. Stat. § 45-91(4) when it charged Pay-to-Pay fees that were not permitted by applicable law nor the Mortgage Agreements between Caliber and Plaintiff Davis and the North Carolina Class.

102.     Caliber knew that the Mortgage Agreements of Plaintiff Davis and the North Carolina Class Members did not expressly authorize Caliber to collect Pay-to-Pay Fees, and that Caliber did not have a right to collect the fees under applicable law. Despite this knowledge, Caliber represented to Plaintiff Davis and the North Carolina Class Members that it had the right to collect Pay-to-Pay Fees, and collected them from Plaintiff Davis and the North Carolina Class Members.

103.     At least 30 days before the filing of this complaint, Plaintiff Davis notified Caliber of this violation to an address appearing on Caliber communications. Caliber did not respond.

104.     As a result of Caliber's violations of the NCMDCSA, Plaintiff Davis and the North Carolina Class members were harmed.

105.     To the extent required, this cause of action is being pled in the alternative.

**COUNT III**
**VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

## N.C. Gen. Stat. §75-1.1
## On Behalf of Plaintiff Davis and the North Carolina Class

106.    All prior and subsequent paragraphs are hereby incorporated by reference.

107.    Caliber engaged in "commerce" as defined by N.C. Gen. Stat. § 75-1.1 when it attempted to collect, and collected, a debt associated with mortgage payments.

108.    Caliber generally violated the NCUDTPA under N.C. Gen. Stat. § 75-1.1 when it engaged in unfair and deceptive practices in trade or commerce by taking advantage of consumers in claiming and collecting amounts not owed.

109.    Caliber never informed Mr. Davis when he made his payments online that the actual cost to Defendant for the Pay-to-Pay Fee was less than the amount charged to Mr. Davis.

110.    Caliber never informed Mr. Davis when he made his payments online process that the collection of the Pay-to-Pay fee was not allowed under his Deed of Trust.

111.    The NCUDTPA also makes illegal violations of statutes intended to prohibit unfair and deceptive acts or practices within specific industries. The NCDCA and NCMDCSA were enacted to prohibit unfair and deceptive acts within the debt collection and servicing industries. Thus, by violating the NCDCA and NCMDCSA, there is a per se violation of the NCUDTPA.

112.    As a result of Caliber's NCUDTPA violations, Mr. Davis and the North Carolina Class members suffered substantial damage, including but not limited to financial damage incurred from Caliber's unlawful Pay-to-Pay Fees.

113.    To the extent required, this cause of action is being pled in the alternative.

20

**COUNT IV**
**VIOLATION OF THE MARYLAND CONSUMER DEBT COLLECTION ACT**
**Md. Code, Com. L., § 14-202(8).et seq.**
**On behalf of Plaintiff Bingham and the Maryland Class**

114.    All prior and subsequent paragraphs are hereby incorporated by reference.

115.    The MCDCA defines "collector" as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction." Md. Code, Com. L., § 14-201(b). The MCDCA applies to Caliber because it attempts to collect alleged debts arising out of consumer transactions.

116.    Plaintiff Bingham and the Maryland Class Members engaged in consumer transactions when they took out mortgages in order to acquire real property for personal, family, or household uses. Mr. Bingham took out the mortgage loan secured by his property and now serviced by Caliber for personal, family, or household uses. *See* Md. Code, Com. L., § 14-201(c).

117.    The MCDCA prohibits "collectors" such as Caliber from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *Id.* § 14-202(8).

118.    Caliber knew that the Mortgage Agreements of Plaintiff Bingham and the Maryland Class Members did not expressly authorize Caliber to collect Pay-to-Pay Fees, and at most permitted Caliber to assess amounts "disbursed" to process Pay-to-Pay Transactions. Despite this knowledge, Caliber represented to Plaintiff Bingham and the Maryland Class Members that it had the right to collect Pay-to-Pay Fees, and collected them from Plaintiff Bingham and the Maryland Class Members. The Pay-to-Pay Fees collected were in excess of the amounts "disbursed" to process the Pay-to-Pay Transactions.

21

119. As a result of Caliber's violations of the MCDCA, Plaintiff Bingham and the Maryland Class members were harmed.

**COUNT V**
**BREACH OF CONTRACT**
**On Behalf of Plaintiff Davis and the North Carolina Class**
**On Behalf of Plaintiff Bingham and the FHA Pay-to-Pay Class**
**and the Maryland Class**

120. All prior and subsequent paragraphs are hereby incorporated by reference.

121. Plaintiffs and the Class Members are parties to contracts with Caliber. Caliber became bound as an assignee to the mortgages held by Plaintiffs and the Class members when it became the servicer of their mortgage loans. Caliber breached its contracts with Plaintiffs and the Class Members when it charged Pay-to-Pay Fees in violation of the Uniform Mortgages and in excess of the amounts actually disbursed by Caliber to pay for the cost of the Pay-to-Pay Transactions.

122. Plaintiffs and the Class Members suffered damages when Caliber violated its contracts with them by assessing Pay-to-Pay Fees.

**Davis Breach**

123. Mr. Davis purchased a home subject to the North Carolina Mortgage Agreement. *See* Ex. A. When Caliber became accepted an assignment of such mortgage and became the servicer of the mortgage, it became a party to the North Carolina Mortgage Agreement. Thus, Caliber became bound as an assignee by the North Carolina Mortgage Agreement with Mr. Davis whereby money was lent to Mr. Davis to purchase property in exchange for certain payment over time. *See* Ex. A ¶¶ 13, 20.

124.     Mr. Davis has made payments online. Each time he does so, Caliber charges him a Pay-to-Pay Fee. For example, on or about December 10, 2019, Caliber charged Mr. Davis a $3.50 Pay-to-Pay Fee when he made a mortgage payment online.

125.     These fees were not authorized by the North Carolina Mortgage Agreement.

126.     The North Carolina Mortgage Agreement states that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located," i.e., North Carolina. Ex. A ¶ 16. It further states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.* ¶ 14.

127.     "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2 ¶ I.

128.     Caliber's collection of the Pay-to-Pay Fees violated the NCDCA because the North Carolina Mortgage does not expressly allow Caliber to charge Pay-to-Pay Fees. *See* N.C. Gen. Stat. § 75-55(2) (making it illegal to "collect[]or attempt[] to collect from the consumer all or any part of the debt collector's fee or charge for services rendered [or] any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such a fee or charge").

129.     Caliber's collection of the Pay-to-Pay Fees also violated the NCMDCSA, because neither North Carolina law nor the North Carolina Mortgage expressly permit Caliber to charge them. *See* N.C. Gen. Stat. § 45-91(4) (requiring that services collect only fees "permitted under applicable law and the contracts between the parties").

130. By violating the NCDCA and the NCMDCSA ("Applicable Law"), Caliber breached paragraphs 14 and 16 of the North Carolina Mortgage.

131. Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 9, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by lender" to become the debt of the borrower. *See* Ex. A ¶ 9 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Mr. Davis's mortgage, Caliber violated ¶ 9 of the North Carolina Mortgage Agreement.

132. Because the above provisions are contained in the "Uniform Covenants" section of the North Carolina Mortgage Agreement, Caliber has breached its contracts on a class-wide basis.

133. Plaintiff Davis was damaged by Caliber's breach.

**Bingham Breach**

134. Mr. Bingham owns property in Maryland that is subject to the Maryland Mortgage Agreement. *See* Ex. B. Caliber is a party to the Maryland Mortgage Agreement.

135. Mr. Bingham sometimes makes his mortgage payments online or at the ATM. When he does, Caliber charges him a Pay-to-Pay Fee. For example, Caliber charged Mr. Bingham $3.50 to pay his mortgage online, including on December 16, 2019. Similarly, Caliber charged Mr. Bingham $8 to pay his mortgage at an ATM, including on July 20, 2019. These fees were not authorized by the Maryland Mortgage Agreement.

136. The Maryland Mortgage Agreement does not authorize Pay-to-Pay Fees.

24

137.    Mr. Bingham, like many borrowers, has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of the FHA mortgages state that the lender may only assess fees authorized by the Secretary of HUD.

138.    HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

139.    The Handbook does not authorize Pay-to-Pay Fees. Caliber has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

140.    Like other FHA mortgages, the Maryland Mortgage Agreement states that "Lender may collect fees and charges authorized by the Secretary." Ex. B ¶ 8. By assessing Pay-to-Pay Fees not "authorized by the Secretary," Caliber violated the uniform covenants of the Maryland Mortgage Agreement.

141.    Paragraph 7 of the Maryland Mortgage Agreement states that only "amounts disbursed by the lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument." See Ex. B, ¶ 7. Despite this express limitation, Caliber

assessed Pay-to-Pay Fees not agreed to in the Maryland Mortgage Agreement and in excess of the amounts actually disbursed by Caliber to pay for the cost of the Pay-to-Pay Transactions.

142. Because the above provisions are contained in the "Uniform Covenants" section of the Maryland Mortgage Agreement, Caliber has breached its contracts on a class-wide basis.

143. Plaintiff Bingham and the Maryland Class members and FHA Class members were damaged by Caliber's breach.

**COUNT VI**
**UNJUST ENRICHMENT**
**On Behalf of Plaintiff Bingham and the Maryland Class and**
**Plaintiff Davis and the North Carolina Class**
**(pled in the alternative to breach of contract claims)**

144. All prior and subsequent paragraphs are hereby incorporated by reference.

145. Plaintiffs and the Class Members conferred benefits on Defendant. Namely, Plaintiffs and the Class Members paid Pay-to-Pay Fees to Defendant.

146. Defendant's retention of these benefits is unjust because Defendant had no right to collect the Pay-to-Pay Fees under the Uniform Mortgages or applicable law.

147. Plaintiffs and the Class Members are entitled to restitution and Defendant is required to disgorge the benefits it unjustly obtained.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1. An order certifying the proposed classes pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiffs and their counsel to represent them;

2. Monetary and/or equitable relief in an amount to be determined at trial;

3.      Statutory damages and/or penalties, including treble damages;

4.      Punitive or exemplary damages;

5.      Pre- and post-judgment interest to the extent provided by law;

6.      Attorneys' fees and costs of suit, including costs of notice, administration, and

expert fees; and

7.      Such other legal or equitable relief, including injunctive or declaratory relief, as

the Court may deem appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.**

Dated: April 15, 2020                                      Respectfully submitted,

                                                          /s/ W. Stacy Miller, II
                                                          W. Stacy Miller II, Esq.
                                                          MILLER LAW GROUP, PLLC
                                                          Fayetteville St., Suite 201
                                                          Raliegh, NC 27602
                                                          Phone: (919) 348-4361
                                                          Fax: (919) 729-2953
                                                          Stacy@MillerLawGroupNC.com

                                                          Hassan A. Zavareei (*pro hac vice*
                                                          application to be filed)
                                                          Kristen G. Simplicio (*pro hac vice*
                                                          application to be filed)
                                                          Katherine M. Aizpuru (*pro hac vice*
                                                          application to be filed)
                                                          TYCKO & ZAVAREEI LLP
                                                          1828 L Street NW, Suite 1000
                                                          Washington, D.C. 20036
                                                          Phone: (202) 973-0900
                                                          Fax: (202) 973-0950
                                                          hzavareei@tzlegal.com
                                                          kaizpuru@tzlegal.com

V. Chai Oliver Prentice (*pro hac vice*
application to be filed)
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
vprentice@tzlegal.com

James L. Kauffman (*pro hac vice*
application to be filed)
BAILEY & GLASSER LLP
1055 Thomas Jefferson St. NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
jkauffman@baileyglasser.com

***Attorneys for Plaintiffs***